## SOLOMONS *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 64. · Argued November 10, 11, 1890. — Decided December 8, 1890.

When a person in the employ of the United States makes an invention of value and takes out letters patent for it, the government, if it makes use of the invention without the consent of the patentee, becomes thereby liable to pay the patentee therefor.

If a person in the employ and pay of another, or of the United States, is directed to devise or perfect an instrument or means for accomplishing a prescribed result, and he obeys, and succeeds, and takes out letters patent for his invention or discovery, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer.

When a person in the employ of another in a certain line of work devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other employés to develop and put in practicable form his invention, and explicitly assents to the use by his employer of such invention, a jury, or a court trying the facts, is warranted in finding that he has so far recognized the obligations of service flowing from his employment and the benefits resulting from his use of the property, and the assistance of the coemployés, of his employer, as to have given to such employer an irrevocable license to use such invention.

*McClurg* v. *Kingsland*, 1 How. 202, affirmed and applied.

DURING the years 1867 and 1868 Spencer M. Clark was in the employ of the government as Chief of the Bureau of Engraving and Printing. That bureau was not one created by any special act of Congress, but was established by order ·

of the Secretary of the Treasury, under the general powers conferred by the second section of the act of July 11, 1862, 12 Stat. 532, now § 3577 Rev. Stat., which provides as follows:

"That the Secretary of the Treasury be, and is hereby, authorized, in case he shall think it inexpedient to procure said notes, or any part thereof, to be engraved and printed by contract, to cause the said notes, or any part thereof, to be engraved, printed, and executed, in such form as he shall prescribe, at the Treasury Department in Washington, and under his direction; and he is hereby empowered to purchase and provide all the machinery and materials, and to employ such persons and appoint such officers as may be necessary for this purpose."

While so employed he conceived the idea of a self-cancelling stamp, and under his direction the employés of that bureau, in the fall of 1867, using government property, prepared a die or plate, and put into being the conception of Mr. Clark. On February 10, 1868, Clark filed a caveat in the Patent Office, and on September 1 an application for a patent. While this application was pending, and on December 6, 1869, he assigned, by deed duly recorded, his rights to the appellant, in payment of a long-standing account of appellant against him. On December 21, 1869, the patent was issued to appellant, as the assignee of Clark, antedated to June 21, 1869. On December 27, 1869, appellant notified the Commissioner of Internal Revenue that he was the owner of the patent, and sought an arrangement for proper compensation for the use of this patented stamp by the government on whiskey barrels. No answer was made to this communication, and on September 17, 1875, appellant brought this suit in the Court of Claims to recover from the government for such use. In addition to the matters heretofore stated, the following facts were found by the Court of Claims:

"I. In the latter part of 1867, or early part of 1868, while the subject of revising the methods for collecting internal revenue was being considered by the Committee on Ways and Means of the House of Representatives, a subcommittee was

given special charge of the tax on whiskey and distilled spirits. A room was assigned by the Secretary of the Treasury in the Treasury building to this subcommittee, which immediately proceeded to hold official consultations with the Secretary of the Treasury and Commissioner and Deputy Commissioner of Internal Revenue. Into these consultations Spencer M. Clark, the Chief of the Bureau of Engraving and Printing, was called officially, and to him was assigned the duty of devising a stamp, and it was early determined and understood by all, including Mr. Clark, that the scheme would proceed upon the assumption that the best stamp which he could devise would be adopted and made a part of the revised scheme. In these consultations it was mutually understood that Mr. Clark was acting in his official capacity, as Chief of the Bureau of Engraving and Printing, and it was not understood or intimated that the stamp which he was to devise would be patented or become his personal property.

"II. In the course of the consultations referred to in the first finding, Mr. Clark laid before the Commissioner and subcommittee a self-cancelling revenue stamp as being, in his opinion, a very desirable stamp for the prevention of fraud. This stamp was satisfactory to the Committee on Ways and Means and to the Commissioner of Internal Revenue. It was of the same design and construction as the stamp subsequently adopted by the Commissioner and manufactured and used by the government, as hereinafter set forth, and was the same device as that set forth and described in the specifications of Clark's patent annexed to and forming part of the petition.

"III. No bargain, agreement, contract or understanding was ever entered into or reached between the officers of the government and Mr. Clark concerning the right of the government to use the invention or concerning the remuneration, if any, which should be paid for it. Neither did Mr. Clark give notice or intimate that he intended to protect the same by letters patent, or that he would expect to be paid a royalty if the government should manufacture and use stamps of his invention. Before the final adoption of the stamp by the Commissioner of Internal Revenue he stated to him that the

design was his own, but that he should make no charge to the government therefor, as he was employed on a salary by the government and had used the machinery and other property of the government in the perfection of the stamp. No express license to use the invention was ever given by Mr. Clark to the government, nor any notice prohibiting its use or intimating that he would demand a royalty.

"IV. Immediately after the enactment of the act 20th July, 1868 (15 Stat. 125), and before Mr. Clark had filed an application for a patent, the Commissioner of Internal Revenue adopted the stamp as the one to be used in the collection of the tax on whiskey and distilled spirits. It was adopted by the Commissioner on the recommendation of Mr. Clark. The Commissioner's selection referred to the completed and perfected stamp which had been devised by the claimant and engraved and made in the Bureau of Engraving and Printing and approved by the Committee of Ways and Means, as set forth in the second finding. The Government then proceeded to manufacture at the Bureau of Engraving and Printing large quantities of these stamps. The first so manufactured were delivered to the Commissioner of Internal Revenue on the 25th August, 1868, and the 2d November following was fixed by the Secretary of the Treasury as the day for commencing the use thereof. Their manufacture and use were continued until some time in the year 1872, the last issue to the collection districts being on February 15, 1872."

And upon these facts judgment was entered in favor of the government. 21 C. Cl. 479, and 22 C. Cl. 335. From such judgment an appeal was brought to this court.

*Mr. Lewis Abraham* and *Mr. Benjamin F. Butler* for appellant.

*Mr. Solicitor General* for appellees.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The case presented by the foregoing facts is one not free from difficulties. The government has used the invention of

Mr. Clark and has profited by such use. It was an invention of value. The claimant and appellant is the owner of such patent, and has never consented to its use by the government. From these facts, standing alone, an obligation on the part of the government to pay naturally arises. The government has no more power to appropriate a man's property invested in a patent than it has to take his property invested in real estate ; nor does the mere fact that an inventor is at the time of his invention in the employ of the government transfer to it any title to, or interest in it. An employé, performing all the duties assigned to him in his department of service, may exercise his inventive faculties in any direction he chooses, with the assurance that whatever invention he may thus conceive and perfect is his individual property. There is no difference between the government and any other employer in this respect. But this general rule is subject to these limitations. If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had in and to his inventive powers, and that which they are able to accomplish, he has sold in advance to his employer. So, also, when one is in the employ of another in a certain line of work, and devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other employés to develop and put in practicable form his invention, and explicitly assents to the use by his employer of such invention, a jury, or a court trying the facts, is warranted in finding that he has so far recognized the obligations of service flowing from his employment and the benefits resulting from his use of the property, and the assistance of the coemployés, of his employer, as to have given to such employer an irrevocable license to use such invention. The case of *M'Clurg* v. *Kingsland*, 1 How. 202, is in point. In that case was presented the question as to the right of defendants to use an invention

made and patented by one Harley. The facts as stated and the rulings of the court are these: "That Harley was employed by the defendants at their foundry in Pittsburgh, receiving wages from them by the week; while so employed, he claimed to have invented the improvement patented, and, after several unsuccessful experiments, made a successful one in October, 1834; the experiments were made in the defendants' foundry, and wholly at their expense, while Harley was receiving his wages, which were increased on account of the useful result. Harley continued in their employment on wages until January or February, 1835, during all which time he made rollers for them; he often spoke about procuring a patent, and prepared more than one set of papers for the purpose; made his application the 17th February, 1835, for a patent; it was granted on the 3d of March, assigned to the plaintiffs on the 16th of March, pursuant to an agreement made in January. While Harley continued in the defendants' employment, he proposed that they should take out a patent, and purchase his right, which they declined; he made no demand on them for any compensation for using his improvement, nor gave them any notice not to use it, till, on some misunderstanding on another subject, he gave them such notice, about the time of his leaving their foundry, and after making the agreement with the plaintiffs, who owned a foundry in Pittsburgh, for an assignment to them of his right. The defendants continuing to make rollers on Harley's plan, the present action was brought in October, 1835, without any previous notice by them. The court left it to the jury to decide what the facts of the case were; but, if they were as testified, charged that they would fully justify the presumption of license, a special privilege, or grant to the defendants to use the invention; and the facts amounted to 'a consent and allowance of such use,' and show such a consideration as would support an express license or grant, or call for the presumption of one to meet the justice of the case, by exempting them from liability; having equal effect with a license, and giving the defendants a right to the continued use of the invention." On review in this court, the rulings of the trial

court were sustained. That case is decisive of this. Clark was in the employ of the government when he made this invention. His experiments were wholly at the expense of the government. He was consulted as to the proper stamp to be used, and it was adopted on his recommendation. He notified the government that he would make no charge if it adopted his recommendation and used his stamp; and for the express reason that he was in the government employ, and had used the government ·machinery in ·perfecting his stamp. He never pretended, personally, to make any charge against the government. Indeed, there is but one difference between that case and this: in that, Harley's wages were increased on account of his invention; in this, Clark's were not; but such difference does not seem vital. We think, therefore, the rulings of the Court of Claims were correct, and its judgment is

*Affirmed.*