(89 Misc. Rep. 561)

DOSCHER v. PHELPS GUARDANT TIME LOCK CO. et al.

(Supreme Court, Special Term, New York County. March, 1915.)

MASTER AND SERVANT ☞62—RIGHT TO USE INVENTION.

The doctrine that where an employé devises an improved method for doing the work in which he is employed, and uses his employer's property and the services of other employés to develop and put his invention into practical form, and explicitly assents to the use of the same by the employer, the employer thereby acquires an irrevocable license to use same, was inapplicable to an invention of the president and general manager of a corporation, where it appeared that the work on his patent did not interfere with and was no part of his duties, but was done outside of office hours, that he paid the corporation for the services rendered by its employés on his device, and that, while the corporation obligated itself to pay for the material used in constructing it, pending the granting of a patent, and was authorized to sell it to customers, this was done in the interest of the corporation.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 71; Dec. Dig. ☞62.]

Action by Henry Doscher against the Phelps Guardant Time Lock Company and others. Complaint dismissed.

H. F. Cochrane, of Brooklyn, for plaintiff.
Sohmer & Sonnenthal, of New York City, for defendants.

GUY, J. The plaintiff, a stockholder of the defendant company, brings the action in the right of the corporation to compel the individual defendant, E. R. Phelps, its president and general manager, to transfer, assign, and set over to the company certain letters patent of a time lock granted him in September, 1914, upon the grounds, first, that as general manager of the company the defendant was by contract bound to give the corporation the benefit of his inventions; and, second, that the relations of the parties defendant establish the plaintiff's right to the relief demanded. No such contractual obligation is imposed upon the individual defendant. In January, 1904, said Phelps represented a controlling interest in the New York Guardant Lock Company, a New Jersey corporation, whose business was the manufacture and leasing of

time locks under a patent owned by him expiring in 1916. As the result of negotiations with one Firth, who obtained the subscription of the plaintiff to $25,000 of the stock of a new company to be formed, the defendant company was organized on or about January 13, 1904, and pursuant to the plan of organization, as outlined in an agreement dated November 21, 1903, made by the old company, the said Firth and the individual defendant, the old company transferred to the defendant corporation the business theretofore carried on and conducted by the said company, including good will, material, stock on hand, and contracts, and the defendant Phelps transferred to the defendant corporation the letters patent then owned by him of the time lock manufactured by the old company, "together with any and all inventions and improvements on locks to which he is now or may become entitled during the next five years," in consideration of the issuance to him of $400,000 par value of the stock of the defendant corporation, and of his employment by the defendant corporation as its general manager for five years at an annual salary of $5,000. Under the arrangement as carried out, the defendant Phelps represented the controlling interest in the new company. Shortly before the expiration of the five-year period Phelps wrote as follows to the board of directors of the company:

"Gentlemen: In view of the fact that my contract with the Phelps Guardant Time Lock Company, dated January 13, 1904, expires January 13, 1909, I respectfully offer my services as general manager for one year after the expiration of the date of said agreement, January 13, 1904, at the rate of $5,000 per annum."

The evidence convincingly establishes that at the directors' meeting held in January, 1909, Phelps stated that he would not contract with the company longer than one year, and that he would not engage himself under the same terms as under the first contract for twice the salary; that he was thereupon elected general manager for another year at a salary of $5,000, and this contract was renewed each year down to January, 1914, when his annual salary under the renewed yearly hiring as general manager was increased to $8,000. It is evident, therefore, that the defendant Phelps never, after the expiration of the first five-year contract, undertook, either expressly or impliedly, to give his employer any patents to be obtained by him, so that there is no contractual right in the corporation to the benefit of any patent obtained by its manager after January, 1909. The doctrine that when a person in the employ of another in a certain line of work devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other employés to develop and put in practicable form his invention, and explicitly assents to the use by the employer of such invention, a jury or court trying the facts is warranted in finding that he has so far recognized the obligations of service flowing from his employment and the benefits resulting from his use of the property as to have given to such employer an irrevocable license to use such invention (Solomons v. United States, 137 U. S. 342, 11 Sup. Ct. 88, 34 L. Ed. 667; Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 Sup. Ct. 78, 37 L. Ed. 1049; Eustis Mfg. Co. v. Eustis, 51 N. J.

Eq. 565, 27 Atl. 439), is not applicable to the facts of this case, where the acts of the parties preclude any such finding. The work on the new patent did not interfere with, and was no part of, the duties of Phelps as general manager of the company, having been done outside of business hours. He himself paid the corporation for services rendered by its employés on his device when they had nothing else to do; and while the corporation incurred the obligation to pay for material in the construction of the new device pending the granting of the patent, and was authorized to sell the device to its customers, this was done to further the interests of the corporation, and with the view that when the patent was procured the patentee would give the corporation the first opportunity to purchase it. Neither does the fiduciary relation of Phelps to the company, under the established facts, entitle the plaintiff to the relief demanded. Burr v. De La Vergne, 102 N. Y. 415, 7 N. E. 366; American Stoker Co. v. Underfeed Stoker Co. (C. C.) 182 Fed. 642; Johnson Furnace & Eng. Co. v. Western Furnace Co., 178 Fed. 819, 823, 102 C. C. A. 267. The complaint must be dismissed on the merits, with costs.

Complaint dismissed, with costs.