## CALLAHAN v. CAPRON CO.

(District Court, D. Rhode Island. May 5, 1922.)

No. 139.

Patents ⬦210—Defendant held entitled to use invention of foreman made on defendant's time.

. Where the inventor was defendant's foreman, and worked on the invention during the time paid for by defendant, and using defendant's materials and the assistance of its toolmaker, for the purpose of perfecting a device which could be marketed by defendant in place of a device it had been making, which infringed another patent, defendant is entitled to use the invention under an implied license for shop right, even though it did not pay the cost of obtaining the patent.

In Equity. Suit for infringement of patent by Charles J. Callahan against the Capron Company. Bill dismissed.

Perley H. Plant, of Providence, R. I., for plaintiff.

Horatio E. Bellows, of Providence, R. I., for defendant.

BROWN, District Judge. Infringement is charged of letters patent, No. 1,377,804, to Charles J. Callahan, dated May 10, 1921, on application filed February 26, 1921, for collar holder. The collar holder is for use with soft, turn-down collars, for engaging the opposed edges of the collars, to hold the same in position.

Though the answer denies the validity of the patent, this defense was not pressed at the hearing. The defendant admits the manufacture of the patented device, but contends that it has an irrevocable license. or shop right, for the reason that the patented device was produced by its employees, one of whom was the patentee, Callahan, during their working hours, and with material and labor paid for by the defendant. The patentee, Callahan, was employed as foreman of the defendant's shop; defendant being a manufacturer of jewelry of various kinds.

At the time of the plaintiff's employment as foreman, the defendant was selling a collar holder which it purchased in an unfinished condition, and which it polished, colored, electroplated, and put on cards.

Upon being notified that this was an infringement, the plaintiff, in the course of his duties as foreman, undertook to make a collar holder as a substitute for the one they were then using, which would avoid infringement. The work which finally led to the development of the special form of device shown in the patent in suit covered some weeks, during which there was experiment, the production of various models, and a close co-operation between the plaintiff and defendant's tool maker, Horter; in fact, the testimony of Horter in connection with the various exhibits produced by him, raises a doubt as to whether the conception of providing the ends of the collar holder with "opposed rolls" to permit the ready insertion and removal of the fabric, was not Horter's idea, rather than Callahan's.

The mechanical changes necessary to avoid the claim of infringement are little different from such rearrangement of form or design as is to be expected in the ordinary practice in manufacturing jewelry establishments, and such as would be expected from the ordinary skill of a foreman. Assuming, however, that the change passed the range of ordinary mechanical skill, and came within the field of patentable invention, it is evident that it was produced for the purpose of enabling the defendant to continue to offer to the trade a collar holder without subjecting it to claims for infringement, and the work of doing this was assumed by Callahan as a part of his duties as foreman.

While the material supplied by the defendant was of slight value, yet there is evidence that a substantial amount of the plaintiff's own time, as well as the time of a skilled tool maker, was devoted to this work at the expense of the defendant. It also appears that tools were made, and that a considerable number of goods was manufactured and marketed before any claim was made by Callahan that, as an inventor, he was entitled to a royalty. There was evidence of conversations with Corcoran, who was the defendant's bookkeeper and at times acted as assistant manager, as to a royalty, and an offer by the plaintiff to the bookkeeper Corcoran to give to him, individually, a one-half share of the patent upon payment by him of one-half the expenses of taking the patent out. Callahan, however, seems to have made no claim for compensation or royalty to the principal officers of the defendant, until after the defendant had put the goods upon the market in considerable numbers. It is true that the defendant did not advance any sums for the taking out of a patent; on the other hand, it seems that Callahan sought to patent this for his own benefit and that of Corcoran, without consulting the officers of the company.

To enjoin the defendant from the use of this device would result in depriving it of the benefit of the services and time of its foreman and tool maker, for which it has paid them.

Having in mind the reasons which led to the making of this device, the co-operation of defendant's employees in its production in the course of their ordinary employment, and the putting of the goods on the market before any claim to royalty was made by Callahan, I am of the opinion that the present case falls within the line of cases which have upheld an implied license or shop right, and that it would be inequitable to grant an injunction.

The bill will be dismissed. A draft decree may be presented accordingly.