### SCOTT v. MADISON WOOLEN CO. et al.

(District Court, D. Maine, S. D.   January 24, 1925.)

No. 863.

**Master and servant ⬳62—Employer held to have irrevocable license to use invention made and patented by employee.**

Where complainant, while superintendent of defendant's mill and receiving a salary, in-

vented a device for use in the mill, which he patented, using the materials of defendant and the services of its employees in experimenting and in perfecting the invention, which was used in the mill with his consent so long as he remained superintendent, defendant has an irrevocable license for its use.

In Equity.   Suit by William F. Scott against the Madison Woolen Company and others.   Decree for defendants.

James H. Thorne, of Madison, Me., and Wm. R. Pattangall, of Augusta, Me., for plaintiff.

C. W. & H. M. Hayes, of Foxcroft, Me., and Wm. H. Gulliver, of Portland, Me., for defendants.

PETERS, District Judge.   This is a suit for infringement of a patent, asking for an accounting, damages, and an injunction.

The Madison Woolen Company is the only defendant served with process or appearing.

The defense principally relied upon is an implied license to use the patented process.

I find, from the evidence, the following . facts:

The plaintiff was employed as superintendent in the mill of the defendant, the Madison Woolen Company, from 1905 to 1920. He was paid a salary, had no written contract of employment, and was subject to discharge at any time.

In 1909 the managing director of the company called the attention of the plaintiff to the fact that other mills were using to advantage a decating cloth, or leader, so called (an improvement in which is the subject of the invention in suit), and asked him to investigate the matter. The plaintiff both investigated and experimented; experiments in the mill extending over several months. He obtained various leaders and tried them out in the mill. Noting their deficiencies, he finally, in 1910, devised one that served the purpose, and it was used in the mill until the plaintiff left his employment in 1920. He had obtained a patent in 1914 on application filed in 1910. Nothing was said about any charge for the use of the process while the plaintiff was employed as superintendent. At the trial he was asked:

"Q. Did you give them the right to use it while you were there?

"A. I used it myself there, making me a success and the mill a success. There was never any agreement or anything about it."

The plaintiff further said in his testimony:

"While I was there I was satisfied for them to use it and derive the benefit of it,

which added to my reputation and prominence, or whatever you may term it."

The plaintiff personally paid the expense of obtaining the patent. The experiments and work in making and perfecting the leader were done wholly with the labor and material of the defendant company, including the time of the plaintiff, that of the master mechanic, and others in the employment of the company. If a failure had resulted, the loss would have been that of the company.

No objection was made by the plaintiff to the use in the mill of the leader during the six years between the date of the patent and his leaving the mill.

Two instances were testified to by the plaintiff in which the mill sold, through him as superintendent, pieces of the leader. The last sale was in 1920, just before the plaintiff left the employ of the mill, and was really a sale made to himself, but camouflaged as a sale to a third party, so that he, the plaintiff, might have a sample of the cloth in his new position at another mill.

The facts in this case bring it within the class of cases typified by Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 S. Ct. 78, 37 L. Ed. 1049, McClurg v. Kingsland, 42 U. S. (1 How.) 202, 11 L. Ed. 102, and Solomons v. United States, 137 U. S. 342, 11 S. Ct. 88, 34 L. Ed. 667, in which it has been held, as quoted from the Solomons Case in the Lane & Bodley Case:

"When a person in the employ of another, in a certain line of work, devises an improved method or instrument for doing that work, and uses the property of his employer and the service of other employees to develop and put in practicable form his invention, and explicitly assents to the use by the employer of such invention, a jury, or a court, trying the facts, is warranted in finding that he has so far recognized the obligations of service flowing from his employment and the benefits resulting from his use of the property, as to have given to such employer an irrevocable license to use such invention."

See, also, Standard Parts Co. v. Peck, 264 U. S. 52, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033.

This case is also very similar to Callahan v. Capron Co. (D. C.) 280 F. 254, where Judge Brown says:

"To enjoin the defendant from the use of this device would result in depriving it of the benefit of the services and time of its foreman and tool maker, for which it has paid them."

Also, according to the plaintiff's own account, he acquiesced in the defendant's use of this leader cloth for some six years after the date of the patent, receiving his salary all the time. This feature is held significant in the Lane & Bodley Case.

I believe the facts stated amply warrant the finding of an implied irrevocable license or shop right, and that it would be inequitable to grant an injunction. Consequently the bill will be dismissed, with costs.