NATIONAL GAUGE & EQUIPMENT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13413.   Promulgated December 17, 1928.

*Andrew Lees, Esq.*, for the petitioner.
*R. H. Ritterbush, Esq.*, for the respondent.

OPINION.

SIEFKIN: The position of the respondent in this proceeding is that all the patents, except that covering the ammeter, cover instruments which were invented on behalf of the petitioner and that the only basis upon which they can be included in invested capital is on the cost of development to the petitioner. The petitioner did make expenditures on each of these patents and these have been allowed by the respondent in invested capital. The petitioner contends that the patents or the applications therefor were acquired by petitioner for cash and capital stock and should be included in invested capital at their fair value at the time of acquisition.

The respondent cites the case of *Gill* v. *United States*, 160 U. S. 426. In that case, as well as in the case of *Solomons* v. *United States*, 137 U. S. 342, the Supreme Court held that an employer had a license to use the inventions of his employees under certain circumstances. The facts in these two cases were similar. In the *Solomons* case the court said:

* * * An employe, performing all the duties assigned to him in his department of service, may exercise his inventive faculties in any direction he chooses, with the assurance that whatever invention he may thus conceive and perfect is his individual property. There is no difference between the government and any other employer in this respect. But this general rule is subject to these limitations. If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had in and to his inventive powers, and that which they are able to accomplish, he has sold in advance to his employer. So, also, when one is in the employ of another in a certain line of work, and devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other employes to develop and put in practicable form his invention, and explicitly assents to the use by his employer of such invention, a jury, or a court trying the facts, is warranted in finding that he has so far recognized the obligations of service flowing from his employment and the benefits resulting from his use of the property, and the assistance of the coemployes of his employer, as to have given to such employer an irrevocable license to use such invention. * * *

However, in the instant proceeding, the evidence discloses that Gelatt was not employed specifically to make inventions for the petitioner. While it is true that he was active in the engineering department of petitioner, yet he and MacMillan had equal authority in all departments. Gelatt did the work upon the inventions himself and did not use other employees of petitioner in developing it. We believe that these inventions conceived by Gelatt were his individual property and that the petitioner had no implied license to use them.

The evidence discloses that petitioner had paid P. M. Gelatt $100,000 par value of its capital stock for an application for a patent on a radi-meter, but no evidence was adduced to show when this transaction occurred. In the absence of such evidence it would be impossible to determine the value of the application as of the date of acquisition. Gelatt had also applied for a patent on the sawed-pin feature of an oil-pressure gauge and for a patent on a new type of Bezel ring. These applications were assigned to petitioner by Gelatt and petitioner in consideration thereof issued to Gelatt $38,000 par value of its capital stock in 1916.

Section 326 (a) of the Revenue Act of 1918 provides:

That as used in this title the term "invested capital" for any year means (except as provided in subdivision (b) and (c) of this section):

\* \* \* \* \* \* \*

(4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest;

(5) Intangible property bona fide paid in for stock or shares on or after March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding at the beginning of the taxable year, whichever is lowest: *Provided*, That in no case shall the total amount included under paragraphs (4) and (5) exceed in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding at the beginning of the taxable year \* \* \*.

It will be noted that section 326 (a) (4) and (5) of the Revenue Acts of 1918 and 1921 provides for limitation of the amount to be allowed in invested capital for intangible property, based upon the par value of the total stock or shares of the corporation outstanding at the beginning of the taxable year. No evidence was introduced to show the total stock or shares of petitioner outstanding at the beginning of the years 1919, 1920, and 1921, the years here involved, and the respondent's exclusion from invested capital of $38,000 for the application for patents covering the sawed-pin feature of the

oil-pressure gauge and the Bezel ring, and $100,000 for the radimeter, must be upheld.

There remains to be considered the ammeter patent. The Clark Electric Meter Co. manufactured ammeters under patent No. 1,247,813, which was owned by John L. Axen, who owned the majority of the capital stock of the company and who drew royalties from the company on the patent.

The Clark Company received no income except from the sale of these ammeters. Its capital stock and surplus at January 1, 1919, amounted to $17,142.87. In April, 1919, the petitioner paid Axen $50,000 in cash and two notes for $25,000 each for his stock in the Clark Electric Meter Co. This transaction was retroactive to January 1, 1919. About two years later the Clark Electric Meter Co. consolidated with the petitioner.

Sometime in the early part of 1919 Axen assigned this patent to Gelatt and MacMillan for $1 and other considerations. The " other consideration " consisted of petitioner's employing Axen to secure a reissuance of the patent. Gelatt and MacMillan then transferred a one-tenth interest in the patent to each of four other individuals for $1 and other " valuable considerations." The testimony disclosed that the other valuable considerations were negligible. On May 5, 1919, the patent was assigned directly from Axen to the petitioner, and on June 17, 1919, petitioner paid MacMillan and Gelatt each $30,000, and two of the other individuals $10,000 each. On July 5, 1919, the other two individuals received $10,000 each from petitioner. Each of the six returned the money so received to petitioner in exchange for that amount of par value capital stock of petitioner. MacMillan and Gelatt each purchased in addition $25,000 par value of the stock. Gelatt and MacMillan received royalties under the patent from January 1, 1919, to June 17, 1919, but the other four individuals did not.

The respondent contends that these transactions indicate that the acquisition of this patent by the petitioner from the individuals, two of whom at least were officers of petitioner, was not a bona fide transaction and that the petitioner by acquiring the Clark Electric Meter Co. stock from Axen also acquired the patent. The evidence, however, shows that the patent was acquired by the six individuals, and that the petitioner paid them a total of $100,000 cash therefor. This amount should be allowed in invested capital of petitioner for that part of the year 1919 after May 5, 1919, for the year 1920, and for the year 1921.

*Judgment will be entered under Rule 50.*