## UNITED STATES v. DUBILIER CONDENSER CORPORATION.

### Nos. 4656–4658.

Circuit Court of Appeals, Third Circuit.

May 24, 1932.

Leonard E. Wales, U. S. Atty., of Wilmington, Del., Charles B. Rugg, Asst. U. S. Atty., of Washington, D. C., Alexander Holtzoff, Sp. Asst. to Atty. Gen., and Frank J. Keating, of Washington, D. C.

James H. Hughes, Jr., and E. E. Berl, both of Wilmington, Del. (John B. Brady, of Washington, D. C., of counsel), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and JOHNSON, District Judge.

WOOLLEY, Circuit Judge.

The Bureau of Standards is a sub-division of the Department of Commerce and is maintained by the United States for scientific and engineering research. Although originally organized for the purpose of testing and maintaining standards of measurements and solving cognate problems in the interest of the general public, there has been delegated to it from time to time by acts of the Congress additional duties of making scientific research in specific fields. Various departments of the government are authorized to transfer funds to the Bureau of Standards for the purpose of carrying on scientific investigations in which they are particularly interested, as also does the Bureau carry on research in various projects of special interest to private industries, sometimes without cost and other times at their expense. Among its enlarged powers is that of "investigation and standardization of methods and instruments employed in radio communication." 38 Stat. 1044, § 1. To this end it set up a "radio section." In this section Percival D. Lowell and Francis W. Dunmore were employed as laboratory assistants and associate physicists and were engaged in carrying on investigation, research and experimentation in such problems relating to radio and wireless as might be requested by other departments of the government and be assigned to them by their superiors.

In the course of their employment Lowell and Dunmore were members of the "Airplane Radio" group to which were submitted numerous research projects for the benefit of the Air Corps. The subject of "Radio Receiving Sets" was given to a group of which Lowell and Dunmore were not members. At the time in question these two employees were assigned to work on Airplane Project No. 38 for a "visual indicator for radio signals" and Project No. 42 for "airship bomb control and marine torpedo control by radio." Both projects required the design of a radio relay operated by direct current, that is of a mechanism for use on an airplane to receive the output from a radio receiver and to relay it to a coil on the airplane, which would operate either a visual indicator or a trigger; such trigger in turn to release a bomb on a pilotless plane or a marine torpedo. In the midst of these problems, Lowell and Dunmore, impelled solely by their own scientific curiosity and moving outside the scope of the particular work to which they had been assigned, directed their minds to the problem of substituting house lighting alternating current for direct battery current in different branches of radio apparatus, which is discussed at length in Dubilier Condenser Corporation v. Radio Corporation of America (D. C.) 34 F.(2d) 450; Id. (C. C. A.) 59 F.(2d) 305; Id. (C. C. A.) 59 F.(2d) 309. After developing this idea, which was not related to the remote control relay devised for aircraft use, these employees appeared in the Patent Office.

Lowell and Dunmore, claiming to have invented a radio receiving apparatus whose principal characteristic was the elimination of hum, were awarded letters patent No. 1,455,141; Dunmore, claiming to have invented a signal receiving system, was awarded letters patent No. 1,635,117; and, again, both together, claiming to have invented a power amplifier, were awarded letters patent No. 1,606,212.

The patentees assigned these letters patent to the Dubilier Condenser Corporation. The government, realizing of course that, by force of the Act of June 25, 1910 (chapter 423, 36 Stat. 851), as amended by Act of July 1, 1918 (chapter 114, 40 Stat. 705 [35 USCA § 68]), it had limited licenses under these patents in the nature of shoprights to use the apparatus and system invented by the patentees during their employment, but conceiving that it had the higher rights of full ownership in the inventions and title to letters patent, asserted them by these three suits instituted on bills of complaint which are alike except in their references to the different letters patent, praying in each instance that it be decreed the full owner of the invention and that the defendant be directed to assign to it all its rights, title and

interest in the letters patent. The government averred as the basis of its property rights that in the course of their employment there were assigned to Lowell and Dunmore for investigation and research the problems of developing a radio receiving set, a signal receiving system and a power amplifier capable of operation by house lighting alternating current so that the use of electric batteries in such apparatus might be eliminated. (These are the precise subjects matter of the patents.) Pursuant to these instructions they, in the performance of their duties, proceeded to carry on studies, research, investigation and experimentation in those problems, and did work at the radio laboratory of the Bureau of Standards with apparatus and material which were the property of the United States, during their usual hours of employment, which resulted in the inventions and letters patent in question

When the cases came on for hearing before the District Court, the government, first adhering to, and introducing evidence to prove, the straight averments of its bills that Lowell and Dunmore were in each instance specifically assigned to work out the respective scientific problems and that, in consequence, their inventive achievements belonged to it, their employer, somewhat stepped aside from its former stand in the bills and took a position, outside the bills, that failing proof of assignment to the respective tasks the results of the labors of Lowell and Dunmore "in the general field of (their) work" were equally its property and therefore called for a decree for a formal assignment of the patents. The District Court, holding against the government on both its theories, entered decrees dismissing the bills. 49 F.(2d) 306. The government appealed. We shall dispose of the three appeals in one opinion.

The government on these appeals takes the same alternative positions it took in the court below on its claimed right of property in the inventions of its employees, as affected by their assignment or lack of assignment to particular problems out of which grew the inventions, and formulates and stresses as its main contention this question:

"Whether the title to patents granted on inventions made by technical research employees of the Bureau of Standards, at the Government laboratories, principally during the regular hours of employment, with the use of Government-owned material, and with the assistance of Government mechanics and draftsmen, the inventions relating to matters comprised within the general field of the patentees' work, although the specific problem had not been thought of or included in the assignment of duties, is vested in the United States as employer of the inventors."

This statement of the main question, if involving any uncertainty of meaning, is made clear by the government's later statement that:

"It does not matter whether Lowell and Dunmore were specifically assigned to do the work which resulted in the inventions in suit. Admittedly the work was within the general field of their employment, for their duties were to do research and development work in radio."

In arguing this question the government admits on the threshold that it was the employer of the inventors and that its property rights in their inventions were those of an employer. Accordingly, it approaches, step by step, the broad right claimed in its main question through the law of the subject arising out of the relation of employer and employee, varied by circumstances.

Its several propositions are these:

(1) "Inventions made by employees outside of office hours, without the use of material belonging to the employer and having no bearing upon the employee's duties," are the property of the employee, in which the employer has no interest.

This is so obviously sound that it does not require the support of authorities.

(2) "Inventions arising out of or made in connection with the employee's duties, and incidental thereto, by an employee whose duties do not include the carrying on of research or inventive work" (and, we would add, in the absence of a contract therefor), are the property of the employee in which, however, the employer has a shop-right or a non-exclusive license to use the invention.

This, too, is sound; but, because of the narrow line that sometimes appears in such cases in respect to the employee's employment and duties, we cite as supporting authorities Hapgood v. Hewitt, 119 U. S. 226, 7 S. Ct. 193, 30 L. Ed. 369; Dalzell v. Dueber Watch-Case Mfg. Co., 149 U. S. 315, 13 S. Ct. 886, 37 L. Ed. 749; Pressed Steel Car Co. v. Hansen (C. C. A.) 137 F. 403, 2 L. R. A. (N. S.) 1172; Ingle v. Landis Tool Co. (C. C. A.) 272 F. 464; Amdyco Corp. v. Urquhart (D. C.) 39 F.(2d) 943; Id. (C. C. A.) 51 F.(2d) 1072; Moffett v. Fiske, 60 App. D. C. 281, 51 F.(2d) 868

(3) "Inventions made by an employee in connection with his work and within the scope of his work, whose duties include the carrying on of research or inventive work," become the sole property of the employer together with the accompanying patents.

It will be observed that this proposition is the last step toward the proposition of law embodied in the government's main question involved. It approaches that question so closely, indeed it so impinges upon it, that it is impossible to give it unqualified approval. The juxtaposition of the words "research" and "inventive work" throws the statement out of balance. If the proposition were re-formed and made to read, that inventions of an employee, specifically employed or assigned to make them, are the sole property of the employer, we should approve it on authority of Solomons v. United States, 137 U. S. 342, 11 S. Ct. 88, 34 L. Ed. 667; Gill v. United States, 160 U. S. 426, 16 S. Ct. 322, 40 L. Ed. 480; Standard Parts Co. v. Peck, 264 U. S. 52, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033; United States v. Houghton (C. C. A.) 23 F.(2d) 386; Magnetic Mfg. Co. v. Dings Magnetic Separator Co. (C. C. A.) 16 F.(2d) 739.

So, following the government's ascending steps of admitted law and doubtful law as to property in invention between employee and employer, we reach the point where the government lays down and asks the court to pronounce an entirely novel principle of law arising out of that relation, to the effect that where an employee is a member of its research bureau, with the duty to make research on whatever subject assigned, yet when he makes an invention wholly outside the task to which he has been assigned, it becomes the property of the government employer because made "in the general field of the (employee's) work." This proposition of law can be sustained only by giving the word "research" the meaning of the word "invention," or by ignoring or reversing the law of the authorities we have cited. The government, however, relies for the law under its third proposition and its main question involved upon four or five cases, also cited by the appellee. If these cases do not support its claim of property in inventions arising out of work for which the inventors were not employed or to which they were not assigned, it has no support in authority, nor indeed has it support in reason unless we should regard a general employment for research work as synonymous with particular employment (or assignment) for inventive work, and should extend to the government, because of its superior quality as an employer and the superior character of its work, a right of property in its employees' inventions higher than that which the law extends to other employers similarly situated.

The first case on which the government relies is Solomons v. United States, 137 U. S. 342, 11 S. Ct. 88, 89, 34 L. Ed. 667. That was a suit not by the United States asserting title to a patent but by the patentee, assignee of the inventor, to recover from the government for use of the invention. Clark, Chief of the Bureau of Engraving and Printing and therefore an employee of the government, contrary to the fact admitted in the government's main question in the instant case, had been specifically assigned to the task out of which the invention emerged and the letters patent was granted. While it was later said in Gill v. United States, 160 U. S. 426, 435, 16 S. Ct. 322, 40 L. Ed. 480, that on that fact the government, in a proper proceeding, could have asserted title to the invention, for, in making the invention, Clark was merely doing what he was hired to do, the decision in that case was, on the same fact, merely to the effect that the patentee could not recover from the government.

Gill v. United States, 160 U. S. 426, 16 S. Ct. 322, 40 L. Ed. 480, was a suit by a patentee to recover a royalty or other compensation from the government for use of his invention on a showing that the patentee, an employee of the government, required to exercise mechanical skill but not employed or assigned to exercise inventive genius, devised an improved method of doing his work, using the property and labor of his employer to put his invention into practical form and later assenting to its use by the employer. The court held that he could not recover from the government, saying however (quoting from Solomons v. United States), that in such case the property remains in the patentee and the government, though entitled to a shopright or limited license, has no more power to appropriate his property vested in a patent than it has to take his property vested in real estate.

Standard Parts Company v. Peck, 264 U. S. 52, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033, was a suit for infringement. On a finding that the patentee had been employed expressly to develop a process and machinery for manufacturing a specified product and that in developing the invention in the course of his work he did nothing more than what he was hired and paid to do,

the court held the invention belonged to the employer.

Houghton v. United States (C. C. A.) 23 F.(2d) 386, is the last case we shall discuss. There Houghton, a research chemist in the employ of the Public Health Service of the Treasury Department, was assigned to the particular problem of developing a certain kind of gas in collaboration with employees of the Chemical Warfare Service in accordance with their advice and along the lines indicated by previous study and investigation. This was a specific assignment to specific work. The result was successful. Houghton, who contributed to the success, claiming that it was invention and that he was the inventor, applied for and obtained a patent. The United States brought suit claiming that as employer it was the equitable owner of the invention and demanding an assignment of the patent. The court, distinguishing the cases we have cited in their application to different situations, held that property in the invention resided in the United States with the right to an assignment of the patent not because of the patentee's general employment as a research chemist in its Bureau and not because the invention was made by the research employee "within the general field of (his) work" but because of his express assignment to the specific work of which the invention was a result.

Summarizing these decisions, it appears that in each of the three cases, Solomons v. United States; Standard Parts Co. v. Peck and Houghton v. United States, the situation was that an employee, afterwards the patentee, had been specifically assigned by his employer to the problem resulting in the invention. In the fourth case, Gill v. United States, there was no assignment to the problem and the government made no claim to the invention.

It is equally clear that all these decisions for the government were based on the law applicable to a private employer. Indeed, the Supreme Court said in Solomons v. United States, approved in Gill v. United States: "There is no difference between the government and any other employer in this respect." Nor has the government called to our attention any cases involving kindred questions that have been decided upon any other theory. Thus we have gone to some pains to show that the government's claim of property in the inventions in suit is based on its relation as employer to its employees and on its

assertion of a higher right to their "inventions within the general field" of their research work without regard to the facts that ordinarily control the cases of private employers. This position of the government, we discern from the drift of the argument, is really based on the factual assumption that all research work in the Bureau is primarily concerned with invention and is so closely related to it as to be practically a part of it. We find nothing in the record or in the common meaning of the two words to suggest this identity. Failing that, we are back to general law which forbids us laying down a new principle that, if invention occurs in the general field of an employee's occupation, the employer would, without regard to the facts that control the law in varying situations, be entitled to receive the fruits of the employee's invention.

We hold against the government on its statement of the first question involved.

The government, recognizing the possibility of an adverse decision on the question of law as stated in its first or main question involved, presents in the alternative a question of fact as follows:

"Whether, on all the facts, the patented inventions covered matters which were specifically assigned to the patentees for research and development by their superior at the Bureau of Standards."

We have carefully studied the record in this case, first, with the assistance of the very thorough briefs and, again, independently of the briefs. We do not think it necessary to reproduce our work in this opinion by a lengthy recital and discussion of the evidence. It will be enough to say that, in accord with the learned trial judge, we find no evidence that would sustain a finding that Lowell and Dunmore were assigned by their superior to any research or development problems involving the inventions in controversy. Having given particular attention to dates, about which these questions revolve, we think the most that the evidence shows is that Lowell and Dunmore, after completing their inventions in substance, called them to the attention of their superior who, being greatly interested, permitted and encouraged them to pursue their work in the laboratory and perfect the inventions in detail. All this amounted to conduct after the event and is therefore not controlling.

The decrees are affirmed.