I regret that I cannot agree with the the conclusion of the majority of this court *Page 104 
that there was no substantial evidence to sustain that part of the judgment of the Court of Appeals which held that plaintiff was entitled to shop rights in the demounter.
Henderson was employed by plaintiff in November 1945 at $75 per week to adapt his patented hitch for manufacture on products of plaintiff. Until June 1946 Henderson's duties required very little of his time. On some days he had nothing to do. On others, he had work which did not fully occupy his time for the day. He was not required to punch a time clock or to account for his time. Frequently, when there was nothing for him to do, he would stay at the plant during the working day and sometimes did not even go down to the plant. This fact was known to plaintiff. Starting in June 1946 Henderson worked for plaintiff at the Grimm Iron Works in connection with his hitch, but it appears that, even then and until his employment by plaintiff ended, he was allowed to be away when there was no work for him to do and was frequently away for substantial portions of the day.
The tire mounter was exhibited by him to Gemco officials in January 1946, and there was substantial evidence tending to prove that the incorporation of a demounter with it was then discussed and Henderson was instructed by plaintiff to develop one and was told that he would be given whatever help he needed. There was evidence tending to prove that he started developing a demounter as early as February 1946, and it is undisputed that development of the demounter was under way not later than April 1946. There was substantial evidence that the demounter development was practically completed before Henderson left plaintiff's employ in October 1946.
Plaintiff was interested in acquiring exclusive rights to make, use and sell the mounter and was willing *Page 105 
to compensate Henderson for such rights, even though it apparently claimed that the mounter invention belonged to it. When Henderson learned in March 1946 of plaintiff's claim that the mounter invention belonged to it, he employed his own patent attorney and a controversy developed between the plaintiff and Henderson as to ownership of the mounter invention. However, at all times during his employment, Henderson apparently conceded plaintiff's shop rights in that invention. His position was that he owned the invention and the plaintiff had only shop rights.
There was substantial evidence that Henderson asked a raise in salary because of the rights in the mounter invention which plaintiff had obtained through Henderson's employment. Admittedly Henderson's salary was raised in April 1946 from $75 to $100 a week.
There was substantial evidence that Henderson asked plaintiff if be could work on the demounter development at home and he was given permission to do so; and that some of the parts for the demounter were at least partially fabricated in plaintiff's plant. Sometime after April 1946 Henderson was asked by plaintiff if he was working on the demounter and he said that he was. Plaintiff told Henderson it would pay for parts required in the demounter development.
The rights of the holder of a patent are founded exclusively on statutory provisions, 40 American Jurisprudence, 533, Section 3; Brown v. Duchesne, 60 U.S. (19 How.), 183, 195,15 L.Ed., 595. All that a patent and patent statutes give to an inventor is a right, for a limited time, to prevent others from making, using or selling the device which he invented. EthylGasoline Corp. v. United States, 309 U.S. 436, 456,84 L.Ed., 852, 60 S.Ct., 618.
In the early cases recognizing shop rights, the inventor *Page 106 
had led his employer to believe that the inventor would not insist on his right as a patentee to prevent the employer from using, making or selling the patented device. Such conduct was regarded as the equivalent of a representation to that effect by the inventor to the employer. See McClurg v. Kingsland, 42 IT. S. (1 How.), 202, 11 L.Ed., 102; and Solomons v. UnitedStates, 137 U.S. 342, 34 L.Ed., 667, 11 S.Ct., 88.
If the employer, in reasonable reliance upon such representation, incurred a detriment, then there were all the elements of an equitable estoppel. When the inventor sued the employer to enforce the right the inventor's patent gave to prevent anyone from making, using or selling his invention without his permismission, he found himself estopped to claim that he did not give permission to his employer to make, use or sell the invention. Gill v. United States, 160 U.S. 426,40 L.Ed., 480, 16 S.Ct., 322. This equitable defense of the employee resulted in the employer having a right to use, make or sell the invention even though he had no express permission from the inventor. That right was commonly called a "shop right."
In cases where shop rights have been found to exist, the courts have referred to several factors which they regard as justifying the shop right. In some cases there are more factors than in others. An analysis of these factors will disclose that those held sufficient to justify a shop right are such as make the inventor's enforcement of his right to prevent the employer from making, using or selling the invention something which is tainted with what may be described loosely as "not doing equity." United States v. Dubilier Condenser Corp.,289 U.S. 178, 188, 77 L.Ed., 1114, 53 S.Ct., 554, 85 A. L. R., 1488. Cf.Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488,86 L.Ed., 363, 62 S. Ct., 402. *Page 107 
In Gill v. United States, supra, Mr. Justice Brown, on page 435, said:
"The fact that he made use of the time and tools of his employer, put at his service for the purpose, raises either an inference that the work was done for the benefit of such employer, or an implication of bad faith on the patentee's part in claiming the fruits of labor which technically he had no right to enlist in his service."
It may even be said that the equitable recognition of shop rights was merely the result of equity refusing to help the employee bite the hand that fed him. Equity refused to help the employee prevent the employer from practicing an invention conceived or developed in part with the material of the employer or during hours for which the employee was accepting pay from the employer.
In the instant case there was substantial evidence to establish that the plaintiff encouraged Henderson to undertake development of the demounter, that it was developed while Henderson was an employee, and that the plaintiff could reasonably believe that Henderson was developing it with a view to manufacture, sale and use by the plaintiff. Although the work on the demounter was apparently done at Henderson's home, there was substantial evidence to the effect that Henderson sought and obtained permission to carry on the development work at his home instead of at the factory. Furthermore, Henderson was paid a salary and apparently had no very definite hours of work, so that it might even be reasonably inferred from the evidence that the work on the demounter which he did at home was work for which he was being paid by plaintiff.
From my examination of the record I know that many of the foregoing facts were disputed. However *Page 108 
the Court of Appeals, and not this court, is the court which weighs the evidence. It is my conclusion that there was substantial evidence to establish such facts. In the absence of a special finding of facts, which defendants did not request the Court of Appeals to make, I cannot say that the court did not find those facts when it would have been justified on the evidence in finding them.
We have a situation where the Court of Appeals could have found, on the evidence, that Henderson accepted financial encouragement in the development of the demounter, which encouragement was given by plaintiff in the reasonable belief that Henderson would not enforce against the plaintiff any right which his patent on the demounter would give him to exclude plaintiff from making, using or selling it. Under those circumstances I believe that the Court of Appeals would even have been justified in holding that Henderson was equitably estopped to prevent plaintiff from using, making or selling the demounter. If so, the Court of Appeals was justified in its holding that plaintiff had a shop right to make, use or sell the demounter. *Page 109