George Felix MOORE, Jr., Plaintiff,

v.

**AMERICAN BARMAG CORPORATION, Barmag A.G., and Kay E. Schnaidt, Defendants.**

No. C–C–87–228–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

March 7, 1989.

Daniel E. McConnell, Charlotte, N.C., for plaintiff.

John J. Barnhardt, III, Bell, Seltzer, Park & Gibson, Charlotte, N.C., for defendants.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on the following Motions:

(1) Defendants' Motion for Partial Reconsideration of Court's Order of September 2, 1988, filed September 29, 1988 and that Defendants be granted summary judgment; that the Barmag Defendants have a "shop right" in the Plaintiff's 538 patent.

(2) Motion by Defendants for Partial Summary Judgment filed September 29, 1988.

(3) Motion by Plaintiff for Sanctions under Rule 37 and Motion In Limine to preclude unspecified testimony, filed January 6, 1989.

(4) Plaintiff's Motion to Limit use of deposition of George Felix Moore, filed January 6, 1989.

(5) Defendants' Motion for Summary Judgment dismissing claims 4 through 10 of Amended Complaint, filed January 9, 1989.

These Motions came on for hearing before the undersigned at Charlotte, North Carolina on January 24, 1989. Plaintiff was represented by Daniel E. McConnell, Esquire. Defendants were represented by John J. Barnhardt, III, Esquire.

The Court will discuss and rule on each Motion.

Rule 56(c) of the Federal Rules of Civil Procedure establishes the standard of decision this Court must use when determining motions for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Recently, the United States Supreme Court has had several occasions to construe the summary judgment standard established in Rule 56. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (antitrust conspiracy case); *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (libel

action); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (asbestos related wrongful death action); *Adickes v. S.H. Kress Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1969) (alleged conspiracy to violate civil rights).

In *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Supreme Court noted:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

*Id.* 106 S.Ct. at 1356 (emphasis in original; footnote and citations omitted; quoting Fed.R.Civ.P. 56).

■ Stated another way, it is the moving party's burden to show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. If that burden has been met, then the non-moving party must establish that there are indeed genuine issues of material fact; usually this is done by producing affidavits of persons with personal knowledge setting forth specific information to be offered at trial.

■ In *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court stated the following:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial.

*Id.* 106 S.Ct. at 2552–53; *accord White v. Rockingham Radiologists, Ltd.,* 820 F.2d 98, 101 (4th Cir.1987). On the other hand, all reasonable favorable inferences from the pleadings and depositions are to be drawn in favor of the party opposing the motion for summary judgment. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *White,* 820 F.2d at 101; *Ballinger v. North Carolina Agricultural Extension Serv.,* 815 F.2d 1001, 1004 (4th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987).

■ The mere existence of some *alleged* factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; Rule 56 requires that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he substantive law will identify which facts are material." *Id.* On a motion for summary judgment the Court must also consider the evidentiary burden each party will bear at trial. *Id.* 106 S.Ct. at 2511.

■ It is worth noting that in *Anderson v. Liberty Lobby, Inc.* the court held:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* Thus, the summary judgment standard is similar to the standard used when determining a motion for a directed verdict or a motion for judgment notwithstanding the verdict. *Wilson v. Popp Yarn Corp.,* 680 F.Supp. 208, 210 & n. 1 (W.D.N.C.1988) (citing *Anderson,* 106 S.Ct. at 2511–12). The test is whether a reasonable, rational trier of fact, on the basis of the evidence presented, could return a verdict for the party opposing the motion. *Id.*

Summary judgment is not a disfavored procedural shortcut; instead, it is a useful

method for disposing of issues, or even cases, in a just, speedy, and inexpensive way.

### MOTION FOR PARTIAL RECONSIDERATION OF COURT'S ORDER OF SEPTEMBER 2, 1988, FILED SEPTEMBER 29, 1988

In the Court's Order, filed September 2, 1988, 693 F.Supp. 399 the Court denied Defendants' Motion for Summary Judgment on the issues as to: (1) whether Plaintiff must assign his patent to his employer, American Barmag Corporation ("ABC"); and (2) if Plaintiff is not required to assign his patent, whether Defendant ABC is entitled to a non-exclusive license to practice the invention under the "shop right" doctrine.

In Defendants' Motion for Partial Reconsideration filed September 29, 1988, Defendants limited their Motion for Reconsideration to the Court's denial of summary judgment on the "shop right" ground asserted by Defendants.

The background of this dispute and the essential facts are outlined in the Court's Order, filed September 2, 1988, denying Defendants' Motion for Summary Judgment. Since that Order, the Court has been made aware of the fact that the machine at Collins and Aikman (C & A) on which Plaintiff made improvements was owned by Defendants.

Defendants assert that they provided help and services which were of significant value and vital to reducing the invention to practice. Specifically, Defendants point to evidence that:

(1) Moore was employed by ABC as a salaried service engineer and was sent by ABC to C & A to address a problem on a Barmag machine, and that while in a motel paid for by his employer he had an idea for a modification of the machine which would speed the overfeed on the machine.

(2) Moore made several trips to C & A at ABC's expense to test the modified yarn path and reduce it to practice on one of the machines.

(3) Moore prepared drawings and an invention disclosure form for the invention during ordinary working hours at his desk at ABC's office in Charlotte. ABC provided the time, instructions, and administrative assistance to Moore in completing the form.

(4) Barmag's patent counsel conducted a prior art search and prepared and filed a U.S. Patent application, and prosecuted it until Moore refused to execute a formal assignment of the application to Barmag.

Plaintiff, in opposition to Defendants' Motion, points to evidence that:

(1) While at C & A, Moore had an idea for modification of a machine that would avoid the overfeed limitation inherent in the Barmag design for the T–80 machine. The next day Moore went to C & A and modified the machine with labor and materials furnished by C & A and demonstrated the operation of the machine at C & A.

(2) When Moore returned to ABC he asked his superior about compensation for his invention and was informed that compensation may be available, although ABC had no policy for such compensation.

(3) After learning that compensation may be available, Moore disclosed his invention to ABC. Thereafter, he refused to assign his rights to ABC.

### DISCUSSION

Perhaps the most often cited case on shop right is *United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114 (1933). Among other leading cases from which the Court may determine the rules governing "shop right" are *Solomons v. United States*, 137 U.S. 342, 346, 11 S.Ct. 88, 89, 34 L.Ed. 667; *McClurg, et al. v. Kingsland, et al.*, 42 U.S. (1 How.) 202, 11 L.Ed. 102; *Gill v. U.S.*, 160 U.S. 426, 16 S.Ct. 322, 40 L.Ed. 480 (1896); *Wommack v. Durham Pecan Company, Inc.*, 715 F.2d 962 (5th Cir.1983); *Hobbs v. United States*, 376 F.2d 488 (5th

Cir.1967); *Mechmetals Corp. v. Telex Computer Products,* 709 F.2d 1287, 1292–93 (9th Cir.1983).

The following principles have been established by the courts:

(1) If a person employed in the manufactory of another, while receiving wages, makes experiments at the expense and in the manufactory of his employer ... makes the article invented and permits his employer to use it, no compensation for its use being paid or demanded; and then obtains a patent, these facts will justify the presumption of a license to use the invention. *McClurg, et al. v. Kingsland, et al.,* 42 U.S. 202, 206, 11 L.Ed. 102 (1843).

(2) Where a servant during his hours of employment, working with his master's materials and appliances conceives and perfects an invention for which he obtains a patent, he must accord his master a nonexclusive right to practice the invention. *United States v. Dubilier Condenser Corp.,* 289 U.S. 178, 188, 53 S.Ct. 554, 557–558, 77 L.Ed. 1114 (1933).

However, making use of the employer's property and labor is not conclusive, but is important only as an item of evidence tending to show that the patentee consented to and encouraged the employer to make use of his invention. *Gill v. United States,* 160 U.S. 426, 435, 16 S.Ct. 322, 326, 40 L.Ed. 480 (1895).

(3) An employee, performing all the duties assigned to him in his department of service, may exercise his inventive faculties in any direction he chooses, with the assurance that whatever invention he may thus conceive and perfect is his individual property ... But this general rule is subject to these limitations: If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer. *Solomons v. United States,* 137 U.S. 342, 346, 11 S.Ct. 88, 89, 34 L.Ed. 667 (1890).

(4) The employer's assistance in the reduction to practice of an idea is not necessary to his obtaining a shop right in the invention. An employee may reduce his idea to practice on his own time before showing his invention to his employer, and nevertheless subsequent employer-employee cooperation on the invention may be sufficient to confer a shop right upon the employer. In fact, the principal consideration in the shop right determination is not the employer's assistance, but the employee's consent. *Wommack v. Durham Pecan Company, Inc.,* 715 F.2d 962, 966 (5th Cir.1983).

(5) The fact that the patentee made use of the property and labor of the government in putting his conceptions into practical shape, is important only as furnishing an item of evidence tending to show that the patentee consented to and encouraged the government in making use of his devices. The ultimate fact to be proved is the estoppel, arising from the consent given by the patentee to the use of his inventions by the government, without demand for compensation. The most conclusive evidence of such consent is an express agreement or license, such as appeared in the *McAleer* case; but it may also be shown by parol testimony, or by conduct on the part of the patentee proving acquiescence on his part in the use of his invention.

The fact that he made use of the time and tools of his employer, put at his service for the purpose, raises either an inference that the work was done for the benefit of such employer, or an implication of bad faith on the patentee's part in claiming the fruits of labor which technically he had no right to enlist in his service. *Gill v. United States,* 160 U.S. 426, 435, 16 S.Ct. 322, 326, 40 L.Ed. 480 (1896).

Thus, the principal consideration in the shop right determination is not the employ-

er's assistance, but the employee's consent. *Wommack, supra* at p. 966.

Paragraph 9 of Plaintiff's affidavit filed December 7, 1987 states:

Subsequent to the conception and reduction to practice of my inventive thread path design and yarn processing method which are now the subject matter of this lawsuit, and after having first asked about compensation for inventions made, I disclosed the apparatus and methods to others at American Barmag Corporation and Barmag, A.G. From the time of my disclosure forward until the date of this affidavit, I have repeatedly communicated to defendants my demands that I be properly compensated for the use made of my invention.

█ It appears therefore that there is at least a dispute as to a material fact on the issue of consent by Moore to the Defendants' making use of his device without compensation to Moore; there is a dispute of the material fact as to what Moore's duties were; *i.e.,* whether Plaintiff was employed to exercise his inventive faculties for the employer's benefit. Finally, there is a dispute as to whether the Plaintiff used Defendants' materials and was paid his wages and expenses while perfecting his invention.

Therefore, Defendants' Motion for Summary Judgment that Defendants have a shop right entitling them and their customers to practice the subject matter of the 538 patent will be DENIED.

### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT KAY E. SCHNAIDT, FILED SEPTEMBER 29, 1988

█ Plaintiff has filed on December 19, 1988 a Memorandum in Support of opposition to Defendants' Motion for Partial Summary Judgment, which really does nothing more than recite the allegations of his Complaint and inform us of the weight and length of the transcript of Plaintiff's deposition taken by Defendants' counsel (seven pounds and 700 pages). This information carries less weight with the Court than the weight of the transcript.

After citing cases to support the proposition that corporate officers are liable for tortious conduct (another startling bit of information) the Plaintiff continues on pages 3 and 4:

Here, the *claims* (emphasis added) asserted against defendant Kay E. Schnaidt include patent infringement under sections (a), (b), and (c) of 25 U.S.C. 271 and go far beyond such infringement into intentional torts such as misappropriation, conversion, and the others enumerated in the amended complaint and alluded to hereinabove. The evidence developed from the Moore deposition taken by defendants and the affidavit of Kay E. Schnaidt does not clearly establish that the actions taken by Schnaidt are only within the scope of allowed activities for a corporate officer, particularly where the acts of inducing textile manufactures to manufacture in accordance with the protected methods and contributing to such third party manufacture by selling machines and of converting and comingling plaintiff's invention occurred with Schnaidt's full knowledge that Moore was—and had been from the beginning—seeking compensation and willing to negotiate for such compensation while the infringement, conversion and commingling were happening.

The party moving for summary judgment *or opposing summary judgment* must do more than rely on the pleadings.

A critical factor in a motion for summary judgment in a patent case, as in any other, is the determination by the court that there is no *genuine* issue of *material* fact. With respect to whether there is a genuine issue, the court may not simply accept a party's statement that a fact is challenged. *Union Carbide Corp. v. American Can Co.,* 724 F.2d [1567] at 1571, 220 USPQ at 588. [ (Fed.Cir.1984) ] The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient. *Barmag Barm-*

*er Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 835, 836 (Fed. Cir.1984).

In support of their motion, Defendants point to the following from Plaintiff's deposition taken June 26, and July 2, 1987, pp. 435, lines 19–25 and 436 and 437, line 1 through line 25:

Q. Put the complaint aside for a moment, please. You have joined Kay Schnaidt as a defendant in this matter. What is the basis of Kay Schnaidt's being a party in this lawsuit?

A. He is a senior official of American Barmag.

Q. So what?

A. Mr. Schnaidt's actions and decisions would reflect those taken by American Barmag as a senior officer.

Q. Are you saying that he dictates policy at American Barmag?

A. He is the top man, yes, sir.

Q. He dictates the policy of American Barmag?

A. As far as I know, yes, sir.

Q. Do you know that corporations exist in part to insulate individuals from liability? Have you been told that?

A. I have read that, yes, sir.

Q. Did Mr. Schnaidt do anything at all with respect to your alleged invention other than as an employee or vice president of American Barmag?

A. Did he what?

Q. Did he do anything?

A. I have no knowledge that he did anything—of any of his activities outside of American Barmag.

Q. Mr. Schnaidt didn't do anything to you or to your alleged invention or to any of your patent—alleged patent rights at all other than in his capacity as an employee of American Barmag, is that correct?

A. As far as I know, yes, sir.

Q. Now, Mr. Schnaidt did not fail to do something that you think he should have done with respect to you or your patent applications or your al-

leged invention in any personal capacity, did he?

A. I can't think of anything offhand, now, sir.

Q. Your idea is that since he is the head man at American Barmag that he is therefore liable for what the company does?

A. I feel he is responsible for the American Barmag policies.

Q. Is the answer to my question yes or no?

A. I'm sorry. Would you repeat?

Q. Is it your idea that Kay Schnaidt, because he is the head man at American Barmag, is therefore responsible and liable for acts that Barmag commits or American Barmag commits?

A. In as far [sic] as he implements them, yes, sir.

Again, on page 438, lines 24 and 25 and page 439, lines 1 through 4, Plaintiff testified as follows:

Q. Your theory in regard to Kay Schnaidt is that he is liable for the acts of American Barmag because he implemented the acts of American Barmag; is that right?

A. Yes, sir.

Q. And it is as simple as that, isn't it?

A. Right now that's all I can think of.

Defendant Schnaidt also filed on September 29, 1988 an affidavit with his Motion for Summary Judgment, in which in substance he stated that he owned no stock in ABC, his duties were administrative only, he had no authority to operate ABC in any manner other than as required by Barmag, A.G., he had no interest in the 538 patent.

Plaintiff has not presented the Court with anything more than his conclusory allegations in his amended Complaint filed September 2, 1987, as to the Defendant Schnaidt.

The Plaintiff has not provided any depositions or affidavits which raise a question of material fact as to whether the Defendant Schnaidt acted other than in his capacity as an officer of ABC.

Based on Defendant Schnaidt's affidavit and the Plaintiff's deposition testimony, Defendant Schnaidt cannot be determined to be an alter ego of either corporate Defendant by any stretch of the imagination, and absent that theory, a corporate officer cannot be held personally liable for the torts of a corporation unless he has committed an intentional tort. *Martin v. Pilot Industries*, 632 F.2d 271, 277 (4th Cir. 1980). Defendants have made a showing that there is no genuine dispute as to any material fact on this issue, unrefuted by any showing to the contrary by the Plaintiff.

■ Similarly, allegations that Defendant Schnaidt was a conspirator, even if supported by depositions or affidavits, which they are not, would have to be dismissed. There can be no conspiracy between a corporation and its officers. In *Buschi v. Kirven*, 775 F.2d 1240 (4th Cir. 1985), the court said at page 1251:

> The intracorporate conspiracy doctrine, as it is known in American law, grew out of the decision in *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911 (5th Cir.1952), *cert. denied*, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953), an anti-trust case based on an alleged conspiracy between the defendant corporation and its officers, employees and agents. In that case, the Court dismissed the action, saying:
>
> > "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." 200 F.2d at 914.

On page 1252, the court in *Kirven* continued:

> Nor is the immunity granted under the doctrine to the agents and the corporation destroyed because the agents are sued individually. As the Court in *Cole v. University of Hartford*, 391 F.Supp. 888, 893 (D.Conn.1975) put it: "Simply joining corporate officers as defendants in their individual capacities is not

enough to make them persons separate from the corporation in legal contemplation. The plaintiff must also allege that they acted other than in the normal course of their corporate duties." This is not to say that there have not been exceptions to the doctrine in certain of the cases. Thus, it has been said that the doctrine is inapplicable "where the plaintiff has alleged that the corporate employees were dominated by personal motives or where their actions exceeded the bounds of their authority." Note, 13 Ga. L.Rev. at 608. We applied such an exception in *Greenville Publishing*, [*v. Daily Reflector, Inc.*] [496 F.2d 391 (4th Cir.1974)] where, after stating that "[w]e agree with the general rule" as stated in the intracorporate conspiracy doctrine in *Nelson Radio*, we added that "an exception may be justified when the officer has an independent personal stake in achieving the corporation's illegal objective." 496 F.2d at 399.

Defendant Schnaidt's motion for partial summary judgment will be GRANTED as to all counts against him.

## MOTION BY PLAINTIFF FOR SANCTIONS UNDER RULE 37 AND MOTION IN LIMINE TO PRECLUDE UNSPECIFIED TESTIMONY FILED DECEMBER 12, 1988

The Court has reviewed Plaintiff's Motion for Sanctions and Motion *In Limine* to preclude unspecified testimony and has determined that sanctions are not warranted since this case was not tried in January and the Court has extended discovery until March 31, 1989. The Motion will be DENIED.

## PLAINTIFF'S MOTION TO LIMIT USE OF THE DEPOSITION, FILED JANUARY 6, 1989

■ Plaintiff's Motion is grounded on the charge that the deposition testimony of George Felix Moore, Plaintiff, was taken under duress, and that counsel for Defendants bullied the deposition witness in such a way that the testimony is tainted. Reading of the deposition passages referred to

by Plaintiff leave this Court with the impression that Mr. Moore was reluctant to give direct answers to the questions asked of him by counsel. In any event, the jury can judge whether or not Mr. Moore was "bullied" from the transcript and from Mr. Moore's testimony at the trial. The Motion will be DENIED.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSING CLAIMS 4 THROUGH 10 OF THE AMENDED COMPLAINT, FILED JANUARY 9, 1989

Plaintiff's claim in Claims 4, 5, 6, 7, 8, 9, and 10 are respectively that the Defendants: (4) have misappropriated Plaintiff's trade secret; (5) conversion of Plaintiff's property and destruction of right of Plaintiff in Germany and elsewhere to patent protection as a sole inventor of his invention; (6) interference with prospective contractual relations in Germany and elsewhere; (7) interference with prospective economic advantage to Plaintiff; (8) tortiously, willfully, and wantonly interfering with duty of going forward with German application; (9) conspiracy to damage Plaintiff by obstructing and impeding prosecution of civil claims of Plaintiff set forth in the Complaint; and (10) conspiracy to damage Plaintiff by converting Plaintiff's sole invention and commingling the rights of Plaintiff in the German patent application.

The Court will discuss each claim.

CLAIM FOUR:

*Misappropriation of Trade Secret Rights of Plaintiff in and to His Invention in Violation of North Carolina Trade Secrets Protection Act.*

■ Defendants argue that the definition of a "trade secret" in N.C.G.S. Sec. 66–152(3)b. means business or technical information that is the subject of efforts that are reasonable under the circumstances to maintain its secrecy, and that the Plaintiff nor anyone else made an effort to keep the invention secret, but disclosed it to numerous textile mills.

Plaintiff's response filed January 17, 1989 was:

Moore's invention constituted a trade secret at the time American and German Barmag disclosed and *began use of it in connection with their business* (emphasis added). Clearly, at the time Moore disclosed his invention to Peter Berger, his superior at American Barmag, the invention was not "generally ascertainable through independent development or reverse engineering." Moore had not disclosed his invention to anyone other than two C & A employees who assisted him in making the prototype of the invention at C & A before disclosing it to Berger in confidence. Before disclosing his invention to Berger, Moore first asked for and received assurances from Berger that Barmag would compensate Moore for use of the information. Thereafter American and German Barmag disclosed the invention to the public and began using the invention on their own machines, all against the express demand of Moore for compensation. These facts establish a prima facie claim of misappropriation of Moore's trade secrets under N.C.G.S. Sec. 66–155.

Plaintiff first disclosed his invention to defendants in October of 1983. In January of 1984 Plaintiff disclosed his invention to Celanese. He also disclosed the invention to other customers. (Moore Depo. 6/26 and 7/2/87) (pp. 168–170).

Moore contends, however, that at the time German Barmag filed its patent application in Germany that the invention was a trade secret. Defendants have not offered any evidence to the contrary.

Defendants state on page 8 of their Memorandum in Support of Motion for Summary Judgment filed January 9, 1989:

Moore's inclusion of state law claims in his Amended Complaint is incorrect as a matter of law. A court cannot consider a claim for misappropriation of a trade secret in the invention published in the 538 patent. A court cannot grant state law protection to an invention which is patented under the law of the United States, *Water Services Inc. v. Tesco Chemicals, Inc.*, 410 F.2d 163, 171 (5th Cir.1969) ("Under the Supremacy Clause, a state

cannot patent a device that is patentable under the federal patent statute: federal patent laws have preempted the field") citing *Sears, Roebuck & Co. v. Stiffel Co., supra,* 376 U.S. [225] at 228, 231 [84 S.Ct. 784, 787, 789, 11 L.Ed.2d 661 (1964)] (inability of states to accomplish same thing as patent protection by some other law, such as "unfair competition").

. . . . .

Moore's trade secret misappropriation and "conversion" and other state law claims must be dismissed since they "encroach" upon federal patent law.

Defendants' citation of *Stiffel* to support his contention is completely misplaced. A cursory reading of *Stiffel* reveals that it concerned an attempt by Stiffel to obtain an injunction against copying of its product for an award of damages for such copying of its unpatentable invention under a state unfair competition law. The court held on pages 231–232, 84 S.Ct. at 789:

> To allow a State by use of its law of unfair competition to prevent the copying of an article which represents too slight an advance to be patented would be to block off from the public something which federal law has said belongs to the public.

Defendants cite *Water Services, Inc. v. Tesco Chemicals, Inc.,* 410 F.2d 163, 171 (5th Cir.1969) for the proposition that a court cannot grant state law protection to an invention which is patented in the United States. That was not what *Tesco* was about.

*Tesco* was an action for breach of a covenant not to compete and an action for misappropriation of a trade secret by breach of a confidential relationship. In fact, *Tesco* on p. 172 held the following:

> We think that substantial policy considerations militate against construing *Sears* and *Compco [Corp. v. Day–Brite Lighting Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964)] as preempting a state's right to protect a trade secret. (Citing cases).
> Georgia law follows the majority view and the Restatement rationale for protecting trade secrets on the ground of a

confidential relationship. (Citing cases). These decisions seem to establish a broad area of protection of trade secrets and suggest that a Georgia court would follow the generally accepted requirements for protection of a trade secret. Basically, these requirements are that the parties view the process or device as a secret and that the secret be revealed in confidence.

*Tesco* on p. 172 cited Restatement of Torts, Section 759, Comment b:

> A trade secret may be a device or process which is patentable; but it need not be that.

. . . . .

> The patent monopoly is a reward to the inventor. But such is not the case with a trade secret. Its protection is not based on a policy of rewarding or otherwise encouraging the development of secret processes or devices. The protection is merely against breach of faith and reprehensible means of learning another's secret.

Further, the statutory law and case law is clear that the misappropriation of a trade secret claim may be considered by this Court. Title 28, Section 1338(b) clearly states:

> (b) The district court shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trade-mark laws.

In *Great Lakes Carbon Corporation v. Continental Oil Company,* 219 F.Supp. 468, 497 (W.D.La.1963), *affirmed* 345 F.2d 175 (5th Cir.1965), *cert. denied,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 the Court said:

> This Court has jurisdiction of the trade secret count by virtue of Section 1338(b) of Title 28, which confers federal jurisdiction over a claim of "unfair competition" when it is joined with a substantial and related claim under the patent laws.

Plaintiff has submitted evidence that at the time he disclosed his invention

to Peter Berger at American Barmag, it may have fit the definition of a trade secret. It was a device which used in one's business gave him an opportunity to obtain an advantage over competitors. *Water Services, Inc. v. Tesco Chemicals, Inc.*, 410 F.2d 163, 171, citing *The Restatement of Torts* (1939), Sec. 757, Comment b.

It also satisfied the Statutory definition under the North Carolina Trade Secrets Protection Act, N.C.Gen.Stat. Sec. 66–152(3)(a) and (b) for which a cause of action for actual and punitive damages and attorney's fees may be recovered.

Section 66–152 provides:

As used in this Article, unless the context requires otherwise:

(1) "Misappropriation" means acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret.

. . . . .

(3) "Trade secret" means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:

(a) Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Section 66–154 provides:

. . . . .

(b) In addition to the relief authorized by subsection (a), actual damages may be recovered, measured by the economic loss or the unjust enrichment caused by misappropriation of a trade secret, whichever is greater.

(c) If willful and malicious misappropriation exists, the trier of fact also may award punitive damages in its discretion.

(d) If a claim of misappropriation is made in bad faith or if willful and malicious misappropriation exists, the court may award reasonable attorneys' fees to the prevailing party.

In *Servo Corporation of America v. General Electric Company*, 337 F.2d 716, 723, 724 (4th Cir.1964), the court said:

Courts long have recognized that where the holder of a trade secret imparts it to another in confidence and that other person then appropriates it for his own use, equitable remedies may be invoked to right the wrong. That it is not necessary that the trade secret be covered by patent was made explicit by the early and oft-quoted case of *Booth v. Stutz Motor Car Co. of America*, 56 F.2d 962 (7th Cir.1932). There, one Booth disclosed in confidence to Stutz officials his plans for the design of an automobile. The company thereafter utilized these plans in producing a new car without offering recognition or remuneration to Booth. Booth brought an action for damages, alleging two causes of action: (1) patent infringement and (2) wrongful appropriation of his plans. The district court dismissed both counts. On appeal, the Seventh Circuit affirmed dismissal of the first count, holding that Booth's reissue patent involved no patentable advance over prior art and was, therefore, invalid. The court went on to reverse the lower court's dismissal of the second count, holding that Booth had established his right to damages for the company's wrongful appropriation, and remanded the case for the assessment of damages (footnotes omitted).

This court has applied the rationale of the Booth case to several cases arising in this Circuit. (Citing cases). *Booth* involved claims for damages for the appropriation of commercial devices in breach of confidences prior to the issuance of a patent. As we said in *Hoeltke v. C.M. Kemp Mfg. Co.*, 80 F.2d 912 at 922–23 (4th Cir.1935):

"The general rule, of course, is that the monopoly of a patent which entitles a patentee to damages for infringement commences only when the patent is granted; but where, in advance of the granting of a patent, an invention is disclosed to one who, in breach of the confidence thus reposed, manufactures and sells articles embodying the invention, such person should be held liable for the profits and damages resulting therefore, *not under the patent statutes, but upon the principle that equity will not permit one to unjustly enrich himself at the expense of another* (emphasis in original). The question was before the Circuit Court of Appeals of the Seventh Circuit in the recent case of *Booth v. Stutz Motor Car Co. of America* (C.C.A. 7th) 56 F.(2d) 962, and we think the decision there rendered is eminently sound and just. It would be a reproach to any system of jurisprudence to permit one who has received a disclosure in confidence to thus appropriate the ideas of another without liability for the wrong."

Clearly, Plaintiff is entitled to proceed with his evidence on this claim and Defendants' Motion will therefore be DENIED.

CLAIM FIVE:

*Tortious Conversion and Destruction of Right of Plaintiff in Germany and Elsewhere to Patent Protection as the Sole Inventor of His Invention.*

 Once again, Plaintiff has made a claim and has offered no evidence or authority to support his claim that the Defendants have "willfully and wantonly destroyed the right of Plaintiff in Germany and elsewhere to patent protection as a sole inventor ..."

Defendants' Motion for Summary Judgment as to this claim will be GRANTED.

CLAIMS SIX AND SEVEN:

*Interference With Prospective Contractual Relations of Plaintiff and Manufacturers and Interference With Prospective Economic Advantage to Plaintiff and the Plaintiff's Rights as a Sole Inventor.*

In order to prevail in these claims, the Plaintiff would have to prove the essential elements of wrongful interference as follows:

... *First,* that a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person. [Citations omitted.] *Second,* that the outsider had knowledge of the plaintiff's contract with the third person. [Citations omitted.] *Third,* that the outsider intentionally induced the third person not to perform his contract with the plaintiff. [Citations omitted.] *Fourth,* that in so doing the outsider acted without justification. [Citations omitted.] *Fifth,* that the outsider's act caused the plaintiff actual damages.

*Childress v. Abeles,* 240 N.C. 667, 674, 84 S.E.2d 176, 181–82 (1954).

Plaintiff has not provided the Court with any affidavit, deposition, answer to interrogatory, admission on file, or other document which would indicate the presence of any of these elements. Summary judgment as to Claims Six and Seven will be GRANTED.

CLAIM EIGHT:

*Willful, Wanton and Negligent Withdrawal of German Patent Application by Defendants*

Plaintiff has alleged in the eighth claim that Defendants by withdrawing the German application and by their negligence damaged Plaintiff by depriving him of the "possibility" of holding a German patent as sole inventor of his invention.

Plaintiff has offered no evidence to support the contention that he ever applied for or had prepared an application for a German patent. He has offered no evidence that he had a patentable invention under German patent law, nor that the withdrawal of the patent application by Plaintiff would forestall an application by the Plaintiff at a later date. Allegations in the pleadings do not create a dispute as to a material fact which would be sufficient to deny a motion for summary judgment.

In answer to Defendants' requests for admission No. 1, Plaintiff has admitted that

he has not filed any other patent application in the United States or elsewhere relating to the subject matter disclosed in the U.S. Patent 538.

In his answer to Defendants' Interrogatory No. 4 to identify all offers (or other efforts the Plaintiff has made to license the patent in suit or any of the subject matter disclosed or claimed in that patent) the Plaintiff merely refers to paragraphs 13, 18, 20, and 22 of his Complaint.

This is insufficient to withstand a motion for summary judgment. The non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp., supra.* Summary judgment will be GRANTED as to Claim Eight.

CLAIMS NINE AND TEN:

*Conspiracy by Defendants to Damage Plaintiff by Obstructing and Impeding the Prosecution of the Civil Claims of Plaintiff Set Forth in His Complaint and Conspiracy to Damage Plaintiff by Converting Plaintiff's Sole Invention and Commingling the Rights of Plaintiff in the German Patent Application With the Right Believed to be Asserted in Behalf of Defendant Barmag, A.G.*

 Schnaidt's affidavit filed September 29, 1988 in support of his Motion for Summary Judgment includes the statement that American Barmag is the wholly owned subsidiary of Barmag A.G.

As was stated in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 a corporation and its subsidiary have a complete unity of interest and are incapable of conspiracy with each other for purposes of Section 1 of the Sherman Act which prohibits any combination or conspiracy in restraint of trade.

Motion for summary judgment as to Plaintiff's Claims 9 and 10 will be GRANTED.

NOW, THEREFORE, IT IS ORDERED that:

(1) Defendants' Motion for Partial Reconsideration of Court's Order and Defendants' Motion for Partial Summary Judgment, filed September 29, 1988, is DENIED;

(2) Plaintiff's Motion for Sanctions Under Rule 37 and Motion *In Limine* to Preclude Unspecified Testimony, filed January 6, 1989, is DENIED;

(3) Plaintiff's Motion, filed January 6, 1989, To Limit the Use of Deposition of George Felix Moore is DENIED;

(4) Defendants' Motion for Partial Summary Judgment as to Claims Against Defendant Schnaidt will be GRANTED; and

(5) Defendants' Motion, filed January 9, 1989, for Summary Judgment dismissing Claims 4 through 10 of Amended Complaint will be DENIED as to Claim No. 4 and will be GRANTED as to Claims 5 through 10.

Summary Judgment for Claims 5 through 10 will be filed simultaneously with this Order.

## JUDGMENT

THIS MATTER is before the Court on Motion for Summary Judgment by Defendants as to all Claims Against Defendant Schnaidt, and as to Claims 4 through 10 of the Plaintiff's Amended Complaint, filed January 9, 1989.

In accordance with the Memorandum of Decision filed simultaneously with this Judgment, the Court finds that there are no material facts in dispute as to Defendant Schnaidt and as to Claims 5 through 10 of Plaintiff's Amended Complaint and that Defendants are entitled to Summary Judgment as a matter of law as to those claims.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that all Claims against Defendant Schnaidt are DISMISSED WITH PREJUDICE and that Claims 5 through 10 of Plaintiff's Amended Complaint are DISMISSED WITH PREJUDICE.

Each party will pay its own costs.